Receipt number AUSFCC-9928574

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### Bid Protest

**(Electronically Filed under Seal on October 17, 2024)**

| | |
|---|---|
| BRAXTON-GRANT TECHNOLOGIES, INC., | REDACTED VERSION |
| Plaintiff, | Case No. __24-1678__ C |
| v. | Judge _____ |
| THE UNITED STATES, | ███████████ |
| Defendant. | |

## COMPLAINT

Plaintiff, Braxton-Grant Technologies, Inc. ("Braxton-Grant"), alleges as follows for its Complaint against the Defendant, the United States of America, acting by and through the Department of Homeland Security, Office of Procurement Operations (the "Agency" or "DHS"):

### Nature of this Action

1.     This Protest arises from the Agency's arbitrary evaluation of proposals under Request for Proposal No. 70RTAC21R00000003 (the "RFP" or the "Solicitation") and unreasonable exclusion of Braxton-Grant from the group of contract awardees.

2.     The Agency irrationally declined to award to Braxton-Grant due to the impermissible application of unstated evaluation criteria, a misreading of the proposal submission, and an unreasonable failure to seek clarifications.

3.     But for the Agency's prejudicial procurement errors, Braxton-Grant would have had a substantial chance of being awarded a contract.

4.      Plaintiff, by this Complaint, respectfully seeks (a) a declaration from the Court that the Agency's actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) a permanent injunction barring the Agency from proceeding with the contract awards; (c) an order directing the Agency to take corrective action, including but not limited to reopening the procurement, seeking clarifications from Braxton-Grant, conducting a reasonable evaluation of Braxton-Grant's proposal in accordance with the terms of the RFP, and issuing a contract award to Braxton-Grant; and (d) all other relief as the Court finds appropriate.

### Request for Leave to File Under Seal

5.      The information in this Complaint may derive from Plaintiff's sensitive, trade secret, or otherwise protected or proprietary materials.  As such, Plaintiff has moved the Court separately for leave to file this Complaint under seal and for a protective order.

### Parties

6.      Braxton-Grant is a Woman-Owned Small Business ("WOSB") with its principal place of business at 1340 Charwood Road, Suite I, Hanover, MD 21076.

7.      Defendant is the United States, acting by and through the Department of Homeland Security, Office of Procurement Operations.

### Jurisdiction and Standing

8.      The Court has jurisdiction over this action pursuant to the Tucker Act, because the case involves Braxton-Grant's objection to "a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of a statute or regulation in connection with a procurement or proposed procurement."  28 U.S.C. § 1491(b).

9.      Braxton-Grant has standing as an interested party to bring this suit because it is an actual offeror who, but for the Agency's procurement errors, possessed a substantial chance of receiving a contract award.  28 U.S.C. § 1491(b)(1).  Braxton-Grant spent considerable resources in submitting a fully compliant and compelling proposal, which, due to its strengths and low price, represented the best value for the Agency.

## Factual Background

10.      On April 20, 2021, the Agency issued Request for Proposal No. 70RTAC21R00000003, known as the FirstSource III procurement, an Indefinite Delivery, Indefinite Quantity (IDIQ) Contract for multiple firm fixed price (FFP) and time and materials (T&M) orders of Information Technology (IT) hardware, software, Value-Added Reseller (VAR) and IT managed services.  RFP, Amend. 0015 at 2.  That purpose remained the same, all the way through Amendment 0015.  *See* RFP, Amend. 0015 at 1.

11.      The Solicitation called for two Functional Categories: (1) Information Technology Value-Added Reseller; and (2) Software.  The Solicitation allowed offerors to submit proposals for one or both Functional Categories.  *See* RFP, Amend. 0015 at 6.

12.      The Solicitation is set-aside 100% for small businesses, broken up into five (5) socioeconomic tracks under the Functional Categories: (1) 8(a); (2) Historically Underutilized Business Zone (HUBZone); (3) Service-Disabled, Veteran-Owned Small Business (SDVOSB); (4) Women-Owned Small Business (WOSB); and (5) all small businesses.  The Solicitation allowed offerors to submit proposals under one or all of the socioeconomic tracks for which they were certified and eligible.  RFP, Amend. 0015 at 2.

13.    The Solicitation had two phases.  Phase I closed on June 9, 2021.  Advisory down-selects were conducted following Phase I, and the Agency issued down select notices on August 3, 2022.  Phase II of the Solicitation closed January 25, 2023.  **Exhibit 1** at 2.

14.    The Solicitation indicated that the Agency would evaluate offerors using a Best Value Source Selection consisting of a best value analysis of the Phase I and II non-price factors. RFP, Amend. 0015 at 123.

15.    The Solicitation also indicated that the Agency would evaluate offerors based on non-price factors in descending order of importance, and that, when combined, the non-price factors would be significantly more important than the price factor.  RFP, Amend. 0015 at 124. The Solicitation further indicated that "[a]s the technical evaluation of proposals approaches equality, greater importance will be placed on price in making the award determination," until proposals were rating equivalent, wherein price would be the determining factor.  RFP, Amend. 0015 at 123.

16.    The Solicitation indicated the evaluation factors were as follows:

Factor 1 – Ability to Perform the Work
Through its evaluation of Factor 1, Ability to Perform the Work, the Government will determine its level of confidence that the offeror understands the requirement, provides sufficient information, and will successfully perform the SOW requirements based on the offeror's response to this factor.

Factor 2 – Supply Chain Risk Management Approach
Through its evaluation of Factor 2, Supply Chain Risk Management Approach, the Government will determine its level of confidence that the Offeror understands the requirement, provides sufficient information, and will successfully perform the SOW requirements based on the offeror's response to this factor.

…

Factor 5 – Price

Through its evaluation of Factor 5, the Government will determine whether Offerors' proposed prices are fair and reasonable. The Government will establish a total evaluated price based on the sum of all prices proposed within the solicitation's Pricing Schedule attachments. The total evaluated price for the Software Functional Category includes the base period for the software packages proposed. The total evaluated price for the ITVAR Functional Category includes only the base period for the supplies and the base and all option periods for services.

RFP, Amend. 0015 at 124.

17.     More specifically, the Solicitation indicated that Factor 2 required offerors to describe each "Offeror's ability to present a sound and fully executable supply chain risk management approach in support of SOW requirements, based on an assessment of Offeror's response to the requirements below," and included only the following:

| R# | Requirement | Response |
|----|-------------|----------|
| 1 | Describe your supply chain risk management approach and explain how you mitigate risks in your supply chain by addressing the following:<br><br>1. Describe how you document and track part numbers back to the OEM.<br><br>2. Describe how you vet proposed suppliers for threat scenarios.<br><br>3. Describe how you prevent from being targeted by malicious actors through the supply chain. | Not to exceed 2 pages. |

RFP, Amend. 0015 at 112; *see also id*. at 105 (identifying the page limit for Factor 2 descriptions as two (2) pages).

18.     Regarding the price factor, the Solicitation indicated that "the price evaluation conducted will assess accuracy, completeness, and reasonableness," which included a

"crosswalk" to compare proposed products with products required by the Solicitation.  RFP,

Amend. 0015 at 125.  The Solicitation also contemplated pricing assumptions.  *See id*. at 104.

19.    The Solicitation included a requirement that "proposed unit prices …will be

binding for the period of time represented within the Pricing Schedule for the applicable supply

and service[, and that] [p]rices for the items proposed will become ceiling prices."  RFP, Amend.

0015 at 7.

20.    The Solicitation also indicated that, "DHS will also, as a part of the Federal

Acquisition Regulation (FAR) 52.217-9 Option to Extend the Term of the Contract procedures,

require awarded FirstSource III contractors to refresh their awarded Pricing Schedule(s) for

FirstSource III Optional Ordering Periods One and Two."  *Id*.

21.    Braxton-Grant submitted a timely proposal to compete for the ITVAR Functional

Category under the socioeconomic categories for Woman-Owned Small Business (WOSB) and

All Small Business (SB).  **Exhibit 2-A**; *see also* **Exhibit 1** at 2.

22.    As part of its proposal, Braxton-Grant proposed the following:

23.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████

24.     Consistent with the Solicitation, Braxton-Grant submitted a ████████████████

██████████████████████████



25.     On September 10, 2024, Braxton-Grant received a notice that it was not selected for award.  **Exhibit 1**.

26.     Pursuant Federal Acquisition Regulation (FAR) Subpart 15.503(b), Braxton-Grant requested an initial debriefing, which the Agency granted on September 16, 2024, via letter providing additional rationale into Braxton-Grant's rating.  **Exhibit 3**.

27.     In both notices, the Agency identified the final awardees, including their prices:

**For the WOSB Category**

| Offeror | Offeror Address | Factor 1: Ability to Perform the Work | Factor 2: Supply Chain Risk Management Approach | Factor 3: Demonstrated Prior Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|---|
| CS Government Solutions (CSGS) | 23187 LaCadena Dr., Suite 102 Laguna Hills, CA 92653 | High Confidence | Some Confidence | High Confidence | High Confidence | $1,134,018,813.78 |
| SD3IT, LLC | 9207 Parthenon Place Seffner, FL 33584 | High Confidence | High Confidence | High Confidence | High Confidence | $297,472,772.62 |
| Trigent Solutions, Inc. | 14081 Murdock St., Suite 120-A Chantilly, VA 20151 | High Confidence | High Confidence | High Confidence | High Confidence | $869,144,708.40 |
| Wildflower International | 5655 Jefferson NE, Ste. B Albuquerque, NM 87019 | High Confidence | High Confidence | High Confidence | High Confidence | $1,215,748,152.69 |

**For the All Small Business Category**

| Offeror | Offeror Address | Factor 1: Ability to Perform the Work | Factor 2: Supply Chain Risk Management Approach | Factor 3: Demonstrated Prior Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|---|
| Akira Technologies Inc | 1730 Pennsylvania Ave., NW Washington, DC 20006 | High Confidence | Some Confidence | High Confidence | High Confidence | $499,657,954.19 |
| Anacapa Micro Products | 1901 Solar Dr., Suite 150 Oxnard, CA 93036 | High Confidence | Some Confidence | High Confidence | High Confidence | $963,219,698.82 |
| CS Government Solutions (CSGS) | 23187 LaCadena Dr., Suite 102 Laguna Hills, CA 92653 | High Confidence | Some Confidence | High Confidence | High Confidence | $1,134,018,813.78 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Digital Technologies, Inc. (DTI) | 161 Fort Evans Rd., Suite 250 Leesburg, VA 20176 | High Confidence | Some Confidence | High Confidence | High Confidence | $874,777,784.52 |
| Government Acquisitions, Inc. (GAI) | 2060 Reading Rd, 3rd fl Cincinnati, OH 45202 | High Confidence | Some Confidence | High Confidence | High Confidence | $1,135,911,760.80 |
| Regan Technologies Corporation | 515 Centerpoint Dr. Ste 115 Middletown, CT 06457 | High Confidence | High Confidence | High Confidence | High Confidence | $849,967,716.18 |
| SD3IT, LLC | 9207 Parthenon Place Seffner, FL 33584 | High Confidence | High Confidence | High Confidence | High Confidence | $297,472,772.62 |
| Snap, Inc | 4080 Lafayette Center Dr. Suite 340 Chantilly, VA 20151 | High Confidence | Some Confidence | High Confidence | Some Confidence | $1,136,898,231.67 |
| Three Wire Systems, LLC | 3130 Fairview Park Dr. Suite 425 Falls Church, VA 22042 | High Confidence | Some Confidence | High Confidence | High Confidence | $385,002,877.48 |
| Trigent Solutions, Inc | 14081 Murdock St., Suite 120-A Chantilly, VA 20151 | High Confidence | High Confidence | High Confidence | High Confidence | $869,144,708.40 |
| Wildflower International | 5655 Jefferson NE, Ste. B Albuquerque, NM 87019 | High Confidence | High Confidence | High Confidence | High Confidence | $1,215,748,152.69 |

**Exhibit 1** at 3-4.

28.    The Agency evaluated Braxton-Grant as follows:



*Id*. at 4.

29.    Under Factor 1, Braxton-Grant received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

30.    Braxton-Grant also received ████████████████ for Factors 3 and 4.

**Exhibit 1** at 4; **Exhibit 3** at 4.

31.    Under Factor 2, Braxton-Grant received ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

32.    Also under Factor 2, Braxton-Grant received ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

33.    Braxton-Grant also received ████████████████

████████████████████████████████████

████████████████████████████████████

████

34.    The Agency indicated that Braxton-Grant's price was ████████████████

████████████████████████████████████ found to be accurate and

complete. ████████████

35.    However, the Agency also found that ████████████████

████████████████████████████████████ alleging

████████████████

████████████████████████████████████

that Braxton-Grant ███████████████████████████ in violation of the Solicitation requirement
that offerors propose binding pricing.  **Exhibit 3** at 7.

36.    The Agency indicated that Braxton-Grant "was not selected for award because ██
████████████████████████████████████████████████ its price was not
found fair and reasonable."  **Exhibit 1** at 6; *see also* **Exhibit 3** at 7.

37.    Following the receipt of those letters, Braxton-Grant submitted further questions,
in accordance with FAR 15.506(d)(6), to which the Agency responded via letter on September
24, 2024, thus closing the debriefing.  **Exhibit 4**.

**Count I**

**The Agency Applied Unstated Evaluation Criteria in assessing Braxton-Grant's Supply
Chain Risk Management Approach (Factor 2)**

38.    Braxton-Grant incorporates by reference the above paragraphs as if fully stated
herein.

39.    Regarding Factor 2, the Solicitation required that offerors demonstrate their
"ability to present a sound and fully executable supply chain risk management approach in
support of SOW requirements, based on an assessment of Offeror's response to the requirements
below."  RFP, Amend. 0015 at 112.  The Solicitation also required that offerors describe their
supply chain risk management approach in no more than *two* (2) pages.  *Id.*

40.    The Solicitation required offerors to describe their supply chain risk management
approach in the context of three questions: asking how offerors (1) document and track part
numbers, (2) vet proposed suppliers for threat scenarios, and (3) prevent from being targeted by
malicious actors.  *Id.*

11

41.     The Solicitation did not identify other specific criteria or key aspects that proposals needed to address.  *See id*.

42.     Nevertheless, the Agency evaluated Factor 2 ████████████████████████ ████████████████████████████████ based on the absence of specific terms or direct references: cybersecurity and physical security access controls.  **Exhibit 3** at 5.

43.     Nothing in the Solicitation identifies specific terms or criteria that a proposal must include in describing a proper supply chain risk management program.  Consequently, the Solicitation *does not* require specific references to cybersecurity or physical security access control.  *See generally*, RFP, Amend. 0015.

44.     Similarly, The Agency found a ████████████████████████████ ████████████████████████████████████████████████ ██

45.     However, nowhere in the Solicitation did it identify the need to include specific evaluation criteria as an element of an offeror's demonstration of its proposed supplier vetting process.  *See generally*, RFP, Amend. 0015.

46.     Rather, the Solicitation stated only that the Agency would review an offeror's *two-page* explanation describing its "ability to present a sound and fully executable supply chain risk management approach" in response to the three questions identified in the Solicitation.  RFP, Amend. 0015 at 112.

47.     Braxton-Grant complied with the Solicitation requirements by adequately describing its supply chain risk management approach in response to the questions identified in the Solicitation and within the required *two-page* limit.  *See* **Exhibit 2-B**.

████████████████████████
████████████████████████████████████████████████

48.    The Agency ████████████████████████████████████████████████

to Braxton-Grant's proposal based on specific alleged omissions which were not required by the

Solicitation and based on a supply chain risk management narrative which did not violate the

requirements of the Solicitation.  *See* **Exhibit 3** at 5.

49.    Had the Agency evaluated Braxton-Grant's proposal based on the stated

evaluation criteria, the Agency would have awarded the ██████████████████████████████

putting Braxton-Grant's highly rated and competitively priced proposal in clear position for a

contract award based on best value to the government.

### Count II

### The Agency Misread and Misevaluated Braxton-Grant's Proposal regarding its Supply Chain Risk Management Approach (Factor 2)

50.    Braxton-Grant incorporates by reference the above-numbered paragraphs as if

stated fully herein.

51.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████    Thus, the Agency's evaluation is materially arbitrary.

Protests will be sustained where "the court determines [that] the agency acted in an arbitrary and

capricious manner, without a rational basis or contrary to law," and "the agency's action in error

was prejudicial."  *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 665 (2014).

52.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████

53.     However, Braxton-Grant **_did_** adequately describe how it would prevent its supply

chain from being targeted by malicious actors. ██████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Furthermore, in

its debriefing responses, ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

54.     Also, Braxton-Grant **_did_** adequately provide details regarding the internal

screening process. ████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

55.     Braxton-Grant's proposal clearly met the terms of the Solicitation and

demonstrated its ability to provide a satisfactory supply chain risk management system. *See*

**Exhibit 2-B**.

56.     ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████ Braxton-Grant's highly rated and competitively priced proposal in position for a

contract award.

█████████████████████████████████████

██████████████████████████████████████████████████████████████

## Count III

### The Agency Misread and Misevaluated Braxton-Grant's Proposal regarding its Price

57.     Braxton-Grant incorporates by reference the above-numbered paragraphs as if stated fully herein.

58.     While the Agency claims that Braxton-Grant's proposal included an unacceptable price assumption, *see* **Exhibit 1** at 5; **Exhibit 3** at 7, the Agency's reading of Braxton-Grant's proposal is unreasonable.

59.     The Solicitation requires that proposed prices are "ceilings" and that prices would be binding for the duration of any contract awarded.  RFP, Amend. 0015 at 7.

60.     The Solicitation also required that "contractors to refresh their awarded Pricing Schedule(s) for FirstSource III Optional Ordering Periods One and Two."  *Id.*

61.     ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██

62.     While the Agency indicated Braxton-Grant's proposal included an assumption that "it intends to adjust its prices," **Exhibit 1** at 5; **Exhibit 3** at 7, that *is not* what the proposal said.  ██████████████████████████████████████

████████████████████████████████████████  That is *exactly* what the Solicitation required—that "contractors … refresh their awarded Pricing Schedule(s)" for the option years.  RFP, Amend. 0015 at 7.

63.     Additionally, to the extent the Agency considered Braxton-Grant's ████

██████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████████████

When a contract is a small business set aside and the Contracting Officer has concerns about an offeror's responsibility, the Contracting Officer is required to refer the matter to the Small Business Administration (SBA) for a Certificate of Competency. FAR 19.602-1(a); *see also* 15 U.S.C. § 637(b)(7); FAR 9.104-1; *Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1355–58 (Fed.Cir. 2015); see generally 13 C.F.R. § 125.5.

64.    Additionally, in its proposal, Braxton-Grant noted that *Id.*

65.    Furthermore, while the Agency identified six items as purportedly being non-compliant based on its "crosswalk" evaluation of the proposed products, each of the items identified by Braxton-Grant meet the stated evaluation requirements, and the Agency fails to indicate why any one of those products is insufficient. *See* **Exhibit 3** at 7.

66.    The Agency's overly critical and unreasonably narrow reading of Braxton-Grant's pricing assumption misrepresented what was a contract-compliant, market-standard expression The Agency's reading misrepresented the proposal and directly contradicted the explicit terms of the

Solicitation, and as such, represented arbitrary and capricious decision-making without rational basis.

67.     But for the Agency's misreading and misapplication of Braxton-Grant's pricing assumption, its price proposal would have been found to be accurate, complete, ███████████ ███████████████████████████████████ putting Braxton-Grant in a strong position for contract award.

<strong>Count IV</strong>

<strong><u>The Agency Abused its Discretion by Failing to Seek Clarification from Braxton-Grant</u></strong>

68.     Braxton-Grant incorporates by reference the above-numbered paragraphs as if stated fully herein.

69.     The Agency ████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████ However, each of those entries included an email address as contact information.  *See* **Exhibit 2-C**.

70.     The Agency, however, elected not to engage in clarifications with Braxton-Grant regarding the foregoing perceived issue, despite the demonstrated *de minimis* nature of that issue. This was arbitrary and an abuse of the Agency's discretion because the perceived issue is precisely the type that is ripe and proper for resolution via clarifications, as opposed to discussions.

71.     Here, the issue is a minor clerical issue involving redundant contact information, the resolution of which would not result in any substantive revision to the proposal. *See, e.g.*, *Aspire Therapy Servs. & Consultants, Inc. v. United States*, 166 Fed. Cl. 366 (2023) (finding that the agency abused its discretion by not seeking clarification from the protester regarding its ████████████████████████████████████████ ██████████████████████████████████████████████████████

failure to match labor hours between its spreadsheets in the proposal); *Level 3 Commc'ns, LLC v. United States*, 129 Fed. Cl. 487, 505 (2016) (finding that the contracting officer's decision not to seek clarification from the protestor regarding the lack of a required routing map in its offer was an abuse of discretion); *BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 513 (2013) (finding agency abused its discretion by refusing to seek clarification from protestor regarding a copying mistake in its offer relating to its subcontractor's experience); *Griffy's Landscape Maint. LLC v. United States*, 46 Fed. Cl. 257, 259 (2000) (finding the Army had a duty to inquire when it found that the proposal lacked required contact information for the offeror's insurance carrier). Indeed, all the Agency had to do here was send Braxton-Grant a simple, one-sentence clarification email on the matter. Its failure to do so was prejudicially arbitrary and capricious.

**Count V**

**<u>The Agency Breached its Implied Duty to Fairly and Honestly Consider Braxton-Grant's Proposal</u>**

72.    Braxton-Grant incorporates by reference the above-numbered paragraphs as if fully stated herein.

73.    This Court and its predecessors have long recognized that unsuccessful bidders can sue to recover the costs of preparing a bid under an implied contract theory that the Government would give fair and impartial consideration to that proposal. *See, e.g.*, *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1340 (Fed. Cir. 2021).

74.    When an agency solicits proposals, the agency impliedly promises that it will give honest, consistent, objective, and fair consideration to the offers received and will not evaluate them arbitrarily or capriciously.

75.     "The ultimate standard for determining whether an unsuccessful bidder is entitled to relief on the ground that the government breached the implied-in-fact contract to consider all bids fairly and honestly is whether the government's conduct was arbitrary and capricious." *J.C.N. Const., Inc. v. United States*, 107 Fed. Cl. 503, 517 (2012) (citing *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed.Cir.1998)).

76.     If the Government breaches this duty, the injured party is entitled to relief.

77.     By soliciting proposals through the Solicitation, the Agency was bound by an implied-in-fact contract to fairly consider Braxton-Grant's proposal.

78.     Based on the foregoing Counts, it is now apparent that the Agency did not fairly consider Braxton-Grant's proposal.

79.     Accordingly, Braxton-Grant should be entitled to recover all its bid and proposal costs, with the precise quantum to be determined during separate proceedings if the parties are unable to agree upon the precise amount.

### Count VI

### The Agency Conducted an Unreasonable Best Value Tradeoff Analysis

80.     Braxton-Grant incorporates by reference the above paragraphs as if fully stated herein.

81.     The Solicitation called for the use of a best value tradeoff analysis in order to issue contract awards.  RFP, Amend. 0015 at 123.

82.     The Agency relied on the errors identified in this Complaint in conducting its best value tradeoff analysis under the Solicitation.  That reliance resulted in a flawed analysis by the Agency, in which Braxton-Grant's proposal was not evaluated according to the terms of the

solicitation. Therefore, the Agency's best value tradeoff analysis was unreasonable and contrary to the terms of the Solicitation.

83.    But for the Agency's clear errors identified above, ███████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ Braxton-Grant's proposal would have represented the best value to the Agency.

84.    Therefore, but for the Agency's unreasonable best value tradeoff analysis, Braxton-Grant would have had more than a substantial likelihood of contract award under the Solicitation.

**Count VII**

**<u>Braxton-Grant is Entitled to Permanent Injunctive Relief</u>**

85.    Braxton-Grant incorporates by reference the above paragraphs as if fully stated herein.

86.    Braxton-Grant asks for the issuance of a permanent injunction to bar the Agency from proceeding with the award of contracts until the Agency takes proper corrective action.

87.    To obtain injunctive relief, a protester generally must demonstrate: (a) success on the merits; (b) irreparable harm if the injunction is not granted; (c) that the balance of hardships favors the protester; and (d) that an injunction is in the public interest. *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (citation omitted).

88.    Braxton-Grant has already established a very strong likelihood of success on the merits, *supra*. Moreover, the production of the Administrative Record and the resulting briefing of dispositive motions will confirm that success.

████████████████████

████████████████████████████████████████████████

89.     If the Court does not grant a permanent injunction, Braxton-Grant, a small, woman owned business, will suffer irreparable harm because "a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract." *Id*. (citations omitted); *see also CRAssocs., Inc. v. United States*, 95 Fed. Cl. 357, 390 (2010).  Moreover, Braxton-Grant will lose the substantial revenue and valuable past performance that it would gain by virtue of being awarded one of the many contracts at issue.

90.     The balance of hardships also weighs in Braxton-Grant's favor because, absent injunctive relief, Braxton-Grant, a small, disadvantaged business, would be denied the opportunity to compete on a level playing field for a contract. *United Payors & United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323, 333-34 (2002).  The Government, on the other hand, would likely suffer harm if it did proceed with the exclusion of Braxton-Grant by losing a successful and highly qualified competitor.  Moreover, Braxton-Grant is not challenging the Agency's evaluation of any other offeror's proposal, and thus no other party would be harmed by the Court's issuance of an injunction.

91.     A permanent injunction would serve the public interest because ensuring that a procurement process conforms to applicable procurement regulations and that contract awards are made reasonably serves the public interest. *CW Gov't Travel, Inc.*, 110 Fed. Cl. at 496 at 496 (quoting *PGBA, LLC*, 57 Fed. Cl. 655 at 663); *see also Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 551 (2010) ("The public interest is, without doubt, served by ensuring that Government officials follow applicable procurement statutes and regulations.") (citations omitted); *Cardinal Maint. Serv.*, 63 Fed. Cl. 98, 111 (2204) ("[A]n injunction will enforce a process whereby bidders can be confident that the contracts on which they bid will be the contracts which are awarded and performed.  An injunction in this case will also promote the

integrity of the procurement process by holding the government accountable for its actions.
Finally, an injunction in this case may result in lowering the cost to the taxpayers of the work. As
a result, an injunction would serve the public interest.").

92.    For these reasons, the Court should grant a permanent injunction.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in its favor
and grant Plaintiff the following relief:

A.    A declaration from the Court that Agency's decision to eliminate Braxton-Grant's
proposal from the competition under the Small Business and WOSB categories was prejudicially
arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B.    A permanent injunction barring the Agency from proceeding with award of
contracts until it has reasonably re-evaluated Braxton-Grant's proposal and engaged in
clarifications;

C.    An order remanding the case to the Agency, directing the Agency to evaluate
properly Braxton-Grant's proposal in accordance with the Solicitation terms and the applicable
laws and regulations;

D.    An order granting attorneys' fees in accordance with the Equal Access to Justice
Act;

E.    An order directing the Agency to reimburse Braxton-Grant for its bid preparation
and proposal costs; and

E.    Such other relief as the Court may deem just and proper.

October 15, 2024

Respectfully submitted,

/s/ Aron C. Beezley

*Of Counsel*:

Aron C. Beezley
Bradley Arant Boult Cummings LLP
1615 L St., NW, Suite 1350
Washington, DC  20036
Tel.: (202) 719-8254
Charles F. Blanchard
Bradley Arant Boult Cummings LLP

E-mail: abeezley@bradley.com
*Attorney of Record for Braxton-Grant Technologies, Inc.*